# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | | |
|---|---|---|
| JANE GABRIEL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 5:18-CV-06158-DGK |
| ANDREW COUNTY, MISSOURI, and BRYAN ATKINS, | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Jane Gabriel alleges that Defendant Bryan Atkins ("Atkins") negligently secured her home, trespassed on her real property, converted her personal property, and violated 42 U.S.C. § 1983 by conducting an unreasonable search and seizure (Doc. 27). She also alleges that Defendant Andrew County is vicariously liable for the unconstitutional actions of Atkins.

Now before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (Doc. 37). Because there are no genuine issues as to any material facts and Defendants are entitled to judgment as a matter of law, the Court GRANTS the motion.

### Background[1]

Jane Gabriel is the widow of Stephen Gabriel ("the decedent"). Defendant Atkins is the sheriff in Andrew County, Missouri, the other named Defendant in this case.

---

[1] This section omits facts properly controverted by Plaintiffs, immaterial facts, facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as fact. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). Although a jury could draw different inferences from these facts, the Court must here state the facts in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

This case arose when Atkins arrived at the home of Plaintiff and decedent's in response to a call regarding an unattended death. Upon his arrival, Atkins found the decedent's father[2] and two co-workers in the home. Also present during the investigation were two other law enforcement officers and the county coroner, as well as the decedent's daughters. They had entered the residence using the decedent's father's key to the home.

Atkins spoke with the decedent's family and coworkers at the house, although the record is unclear as to which family members he spoke. Atkins learned from the decedent's family and co-workers that Plaintiff had recently separated from the decedent and that her whereabouts were unknown at the time. He also learned that Plaintiff and the decedent's family had "some issues," but he did not further inquire as to the specifics of their relationship.

When Atkins left the house to inform Plaintiff of her husband's death, decedent's family were still at the house. Atkins never specifically told them they were allowed to be in the house, but he did not tell them to leave and requested only that they lock the house before they left. Atkins then went back to his office to make some phone calls to try and find someone who could locate Plaintiff. After some time, he was able to find the address where Plaintiff was staying.

Upon his arrival at the address, Atkins informed Plaintiff of her husband's death and that his family was at the home. She told him she did not want the decedent's family at the house and asked if he would make sure they were not there. If they were at the home, she directed him to kick them out. Plaintiff Atkins returned to the home but found it dark and locked up. He checked the home and found the front door, basement entrance door, and basement garage door locked with no cars in the driveway.

---

[2] Atkins knew both the decedent and the decedent's father from working in the Missouri National Air Guard together. For some of that time, the decedent's father was Atkins' base commander. The decedent was in a different organization in the Guard, but Atkins knew who he was. Atkins did not socialize with any of the Gabriel family.

The day after investigating decedent's unattended death, a deputy told Atkins that Plaintiff reported items missing from the house and the locks on the house had been changed. That deputy filed a report as to the items stolen, investigated the theft, and ultimately turned the report over to the prosecutor. The investigation considered decedent's daughters to be suspects in the theft, but the prosecutor ultimately decided the issue was a civil matter and declined to prosecute.

This civil suit followed. Plaintiff originally asserted eight claims against Defendants. Following Defendants' motion for judgment on the pleadings (Doc. 8), this Court dismissed four of those claims. Defendants now seek summary judgment as to the four remaining claims.

**Standard**

A moving party is entitled to summary judgment on a claim if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court makes this determination by viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive summary judgment, the nonmoving party must "substantiate [her] allegation with sufficient probative evidence [that] would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations and citations omitted).

**Analysis**

Defendants seek summary judgment on each count, which include negligence (Count I), trespass and conversion (Count II), and a violation of 42 U.S.C. § 1983 (Count III) against Atkins; and vicarious liability against the County (Count IV).

**I. Official immunity protects Atkins on Count I.**

Plaintiff alleges that Atkins was negligent when he arrived at the home of the decedent to investigate his unattended death and left the home while decedent's family was still inside. Atkins claims that, even if he was negligent, he has official immunity from Plaintiff's suit because his actions were discretionary in nature.

As a matter of law, this Court need not make a finding of negligence on behalf of Atkins if his actions are protected by official immunity. Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008).[3] Discretionary acts require "the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* Ministerial acts, on the other hand, are "clerical" in nature, where "a public officer is required to perform upon a given state of facts, in a prescribed matter, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.*

In investigating the decedent's death, Atkins was performing a discretionary act. Atkins exercised discretion in deciding who to talk to at the house when he arrived, asking questions and choosing what information was important to follow up on, determining who had a right to enter

---

[3] Counts I and II are state-law tort claims, and as such, this Court follows Missouri state law precedent.

the house, locating Plaintiff to notify her, and in following up on her request to "kick [decedent's family] out."

Ministerial acts involve no discretion on behalf of the acting party. They are acts akin to entering a judgment upon the record, *Missouri v. Nesler*, 922 S.W.2d 459 (Mo. Ct. App. 1996), or assessing fixed costs pursuant to statute, *Quality Bus. Accessories, Inc. v. Nat'l Bus. Prods., Inc.*, 880 S.W.2d 333 (Mo. Ct. App. 1994). Plaintiff alleges Atkins' notification to her of decedent's passing was ministerial. But her argument is unavailing. To characterize Atkins' acts as ministerial would mean he exercised no discretion in his attempts to locate her or in his manner of informing her. But Atkins did exercise discretion in taking steps to find Plaintiff and informing her of decedent's death when he arrived at her location. Moreover, there was no written policy prescribing specific actions he was required to take under the circumstances, notwithstanding his own judgment or opinion. Thus, he was performing a discretionary act and is entitled to official immunity.

But even if Atkins were performing a ministerial act, a person performing a ministerial act may only be held liable for negligence if he acted in bad faith or with malice. *Southers*, 263 S.W.3d at 610. Acting with malice is "wantonly [doing] that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Boude v. City of Raymore, Mo.*, 855 F.3d 930, 935 (8th Cir. 2017) (citing *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986)). Acting in bad faith is acting with a "dishonest purpose, moral obliquity, conscious wrongdoing, breach[ing] a known duty through some ulterior motive, or ill will partaking of the nature of fraud." *Id.*

Here, Plaintiff asserts Atkins acted with malice and in bad faith when he:

> failed to supervise the property while notifying the spouse of her husband's death; leaving the family alone with property when he

5

was aware of animosity between the family and Plaintiff; claiming the family had authorization to be present even though the other homeowner was not present; . . . [and] acting out of bias from his longtime relationship to the Gabriel's . . . .[4]

These conclusory allegations are insufficient to establish that Atkins was acting contrary to his duty or with an intent to prejudice or injure her. Therefore, she has not shown that Atkins acted maliciously.

She also cannot establish that Atkins had any dishonest purpose or ill will. That Atkins knew the decedent and his family is simply not enough. Instead, Plaintiff must point to specific evidence support her allegations that Atkins acted in bad faith. She fails to do so.

In this case, no reasonable jury could find that Atkins had a dishonest purpose in conducting his investigation. Rather, the undisputed facts reveal that Atkins acted reasonably by leaving to notify Plaintiff despite the presence of the decedent's family at the home. While Atkins became aware of "some issues" between the Plaintiff and the decedent's family, he was unaware of the "specifics." He also had no reason to believe that the family was wrongfully in the home because they were present when he arrived and had keys to the property.

Because Plaintiff has failed to show any specific evidence supporting her allegations that Atkins acted maliciously or in bad faith, he is entitled to official immunity for his discretionary acts. The Court grants summary judgment on Count I.

**II. Official immunity protects Atkins on Count II.**

Again, this Court need not determine whether Atkins' actions constituted trespass or conversion if he was engaging in a discretionary act pursuant to his official duties. Here, the record indisputably shows he was.

---

[4] Only the allegations relevant to the claims at issue are included.

Atkins alleged trespass occurred when he entered the decedent's home after responding to a call regarding an unattended death. As established above, his investigation into the matter was a discretionary act. Missouri caselaw specifically establishes that when conduct "which is otherwise a trespass" is necessary to perform official duties, it may be justified. *Foremost Ins. Co. v. Pub. Serv. Comm'n of Mo.*, 985 S.W.2d 793, 797 (Mo. Ct. App. 1998). Therefore, any alleged trespass onto the property where the decedent was located is protected by official immunity because it was necessary to his official duty.

Moreover, Plaintiffs fail to assert any facts alleging Atkins improperly converted her personal property. Conversion is variously defined in Missouri law. *See Aldridge v. Francis*, 503 S.W.3d 314, 317 (Mo. Ct. App. 2016) (finding conversion to be defined at times as "any distinct act of dominion wrongfully exerted over one's property, in denial of his right or inconsistent with it"; "the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights"; and "a tort against the right of possession rather than against the right of title") (citations omitted). However it is defined, conversion may be established by showing a tortious taking; any use, or appropriation of use, indicating a claim in opposition over the rightful owner; or a refusal to return possession to the owner upon the owner's demand. *Id.* (citations omitted).

Here, Plaintiff cannot establish that Atkins ever had possession or use of any of her property.[5] She asserts that in leaving decedent's house while decedent's family was still there, he indirectly allowed them to convert her property. But this simply does not meet any of the three ways to show *Atkins* is responsible for conversion. Therefore, Atkins is entitled to summary judgment on Count II.

---

[5] Decedent's cell phone, collected as part of the unattended death investigation, is not alleged to have been converted.

**III. Atkins did not unreasonably search or seize any of Plaintiff's property.**

Plaintiff's final allegation against Atkins claims he conducted an unreasonable search and seizure of her home under the Fourth Amendment in violation of 42 U.S.C. § 1983. In general, a police officer's entry into a residence without a warrant is unreasonable. *United States v. Brandwein*, 796 F.3d 980, 984 (8th Cir. 2015). An exception to this general rule applies to community caretaking. *Burke v. Sullivan*, 677 F.3d 367, 371 (8th Cir. 2012). Under the community caretaking exception, an officer may enter a residence when he has "undertaken [activities] are unrelated to the officer's duty to investigate and uncover criminal activity." *United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir. 2006).

The Supreme Court has found that when law enforcement officers conduct investigations into circumstances where "there is no claim of criminal liability . . . [they are engaging in what] may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) (describing an officer's noncriminal investigation of a traffic accident). Here, Atkins entered the home in response to a call regarding an unattended death. This is a community caretaking function because it is utterly unrelated to any investigations into criminal activity.

Moreover, Plaintiff fails to make any assertion that Atkins actually searched her home or seized her property. The most she asserts is that Atkins permitted the unjustifiable seizure of property by the decedent's family by leaving them unattended in the home. In doing so, she argues he permitted the family to convert Plaintiff's property.[6]

---

[6] Plaintiff also asserts that he refused to remove decedent's family from the home as she requested. The record shows that Atkins attempted to do so, but by the time he returned to the home the family had already left.

It is well established that the Fourth Amendment only applies to government action, which may include private individuals if they act with the knowledge or participation of a government official. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (citations omitted). Any search or seizure in this case was committed by private individuals, and Plaintiff has not established that Atkins participated in any way or that he had any knowledge of their actions. At most, she claims that he failed to investigate the theft of her property, but the record reflects otherwise, showing that the theft was investigated and passed along to the prosecutor.

Finally, Plaintiff argues that Atkins is liable for the unreasonable search and seizure under the state-created-danger theory. This theory requires the state to protect its citizens from a danger it created. *Fields v. Abbott*, 652 F.3d 8867, 890 (8th Cir. 2011). Here, Plaintiff contends that because Atkins created "danger" by leaving decedent's family at the house unattended, he is liable for the theft that occurred thereafter.

But this Court already considered this argument and held that the state-created-danger theory of liability does not apply to a deprivation of a property interest (Doc. 26). *See Fields*, 652 F.3d at 891 (requiring a "significant risk of serious, immediate, and proximate harm"); *Barbara v. Overton*, 496 F.3d 449, 460 (6th Cir. 2007) ("no constitutionally cognizable injury exists in the absence of *physical* harm to tie to the State's action" (emphasis added)); *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994) ("the environment created by the state actors must be dangerous").

The record does not establish that any search or seizure occurred, but even if it did, Atkins was acting pursuant to his community-caretaking duty. Moreover, Plaintiff has no recourse under the state-created-danger theory because she was never in physical danger from Atkins. Therefore, Atkins is entitled to summary judgment on Count III.

**IV. Sovereign immunity protects Andrew County from vicarious liability on Count IV.**

In Count IV, Plaintiff alleges a claim for county liability under 42 U.S.C. § 1983. Government entities are liable under § 1983 for the alleged conduct of their employees "when execution of a government's policy or custom" causes a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, "neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim." *Schoettle v. Jefferson Cty.*, 788 F.3d 855, 861–62 (8th Cir. 2015).

Plaintiff claims that Atkins violated her constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution as discussed above. But no reasonable jury could find that Atkins did so because he was acting in a community caretaking capacity and Plaintiff has produced no evidence that Atkins searched her property, seized her property, or knew that the decedent's family would seize property.

Because there are no valid underlying claims against Atkins, Plaintiff cannot maintain a claim against Andrew County as a matter of law. *See Schoettle v. Jefferson Cty.*, 788 F.3d 855, 861–62 (8th Cir. 2015). Therefore, the Court grants summary judgment on Count IV.

**Conclusion**

In view of the foregoing, Defendants motion for summary judgment (Doc. 37) is GRANTED.

**IT IS SO ORDERED.**

Date:  February 7, 2020          /s/ Greg Kays
      GREG KAYS, JUDGE
      UNITED STATES DISTRICT COURT